ELI KINNEY, ETC., *v.* R. H. HAGNOW, ETC.

**Appearance—General Appearance—Presumption.**

Where an appearance order is in general terms, and there is nothing to show that the appearance was not intended to be general, it cannot be presumed that appearance was made to one branch of the action in which they had but little concern, and that they ignored that branch of the action in which they were directly and vitally interested.

**Insolvency—Contemplation of Insolvency.**

So long as debtors hope to be able to pay their debts and were in good faith endeavoring to do so, believing that they would eventually succeed in doing so, they can not be said to have been contemplating insolvency.

**Assignments for Benefit of Creditors—Preference of Creditor.**

Where a transaction based on intrinsic evidence that it was an attempt on the part of the debtor to prefer one creditor to the exclusion of others, and the device of pledging the individual estate of one of the partners instead of that of the firm which was the real debtor, can not avail the preferred creditor in her attempt to escape the consequences of the law preventing fraudulent assignments.

APPEAL FROM KENTON CIRCUIT COURT.

February 7, 1873.

Opinion by Judge Lindsay:

The order of June 16, 1866, when properly construed, shows that Mary H. Caldwell and E. Kinney entered their appearance as well to the cross-petition of Berry and others as to the original petition of Hagnow. This order is general in its terms and there being nothing to show that such was their intention, it will not be assumed that they entered their appearance to an action which as to them was but little more than formal, and ignored that branch of the litigation in which they were directly and vitally interested.

We are fortified in this conclusion by the fact that their answers when filed apply almost exclusively to the matters set up in the cross-action. Their pleas of limitation must therefore be held insufficient. The facts and circumstances developed by the record leave no room for doubt as to the intention of the Caldwells to prefer their sister by the mortgage executed to her by Richard F. on the 9th of May, 1866.

It is equally clear that at least some of the conveyances to Kinney were made for the same purpose. That the Caldwells contemplated insolvency on the 9th of May is another fact about which the record leaves no ground for controversy.

They must have been satisfied for some months that nothing short of combination of fortunate circumstances could save them from financial ruin. The trial balance made on the 1st of May exhibited the fact that they were then unable to pay their debts, and no doubt suggested to them that they could postpone immediate bankruptcy in no other way than by the sale of some portion of their undivided landed estates, and the application of the proceeds arising from such sales to the payment of such of their debts as could no longer be postponed.

A careful consideration of all the facts and circumstances exhibited inclines us to the conclusion that they hoped with the proceeds of the two sales made to Kinney on the 1st day of May to extricate themselves, for a short time at least, from their embarrassments, and while it is impossible to believe that they did indulge in the chimerical idea that their investments in fruit and their merits

in the patent for fruit preservation would enable them not only to pay all their debts at once, but also to realize large fortunes. We think it manifest that they did then believe that it was possible that they might convert their property into a sufficient sum of money to enable them to continue in business and eventually to pay all their debts.

It is not necessary that we should express an opinion as to whether or not this belief was well or ill founded, because so long as they hoped to be able to pay all their debts and were in good faith struggling to do so, believing that eventually they would succeed, it can not be said that they were contemplating insolvency.

We are therefore of opinion that the chancellor erred in adjudging that the two sales made to Kinney on the 1st day of May, 1866, come within the provisions of the act of 1856.

The mortgage to Mary H. Caldwell, deceased, executed on the 9th of May, is in our opinion the fruit of the series of acts of insolvency committed by the two brothers, either jointly or individually, during the four weeks immediately preceding their assignment. The testimony conduces to show that Richard F. Caldwell agreed to borrow from his sister the amount paid her by Kinney for her land, and to secure her by a mortgage upon a portion of his individual estate, but it can not be said that this agreement was ever consummated. The money was paid on the 12th of December, 1865, and was deposited in the bank of the Caldwells, they as bankers, paying interest on the deposit. This status of affairs remained unchanged until the 9th of May. During all this time Mary H. was the creditor of the firm and not of her brother Richard. It does not appear that she took steps at any time to have the agreement with Richard carried out. She did not even take from him a note for the amount, nor does she seem at any time to have demanded an execution of the contemplated mortgage. Further than this it does not appear that she was apprised of or consulted about the execution of the mortgage made by Richard to her. The change of her account on the books of the banking institution making her a creditor of Richard instead of the firm, was also made without her knowledge. The transaction bears upon its face intrinsic evidence that it was an attempt upon the part of the brothers to prefer their sister to the exclusion of others of their creditors, and the device of pledging the individual estate of one of the partners, instead of

that of the firm, which was the real debtor, will not avail the pre-ferred creditor in her attempt to escape the consequences denounced by the law to prevent fraudulent assignments. Whether or not the act of Richard would operate as an assignment for the benefit of the firm creditors of all the property of both of the part-ners, individual and partnership, is a question not necessarily in-volved in this litigation. There is no contest between partnership and individual creditors, and besides the conveyance of the fruit house to Kinney on the 29th of May was, we are satisfied, an act of bankruptcy committed by both of the partners, and an assignment under the law of all their property for the benefit of all their cred-itors. It follows therefore, that all property disposed of, or at-tempted to be disposed of by the firm or by either of the partners on the 9th of May, and subsequent to that time ought to be subjected to the payment of the debts of the firm, and the conveyances held to inure to the joint benefit of their firm creditors.

The only serious difficulty attending this view of the case is the attempt of Kinney to show that he did not pay the $20,000, the consideration for the two tracts of land sold him by R. H. Caldwell on the first of May, and the 4th of June and that such sum was then applied to the payment of the notes held by E. Kinney & Company, against the Caldwell Bros. We are convinced that such was not the fact. These notes were paid out of the proceeds of the two lots sold him by Richard L. Caldwell and the fruit farm sold him by the firm, and this fact is attempted to be concealed in order to show that these sales were not made to prefer Kinney, as the sure-ties on the notes held by his firm.

It is not for a moment to be believed that the Caldwells would permit Kinney to keep in his hands $20,000 of their money for an entire month, they being all the while pressed by unfortunate creditors and the contract with him being (as he and the Caldwells both represent it) that he should pay said amount in cash, the sales having been made with no reference whatever to the payment of these notes.

It is apparent that the Caldwells hoped with this $20,000 to keep their house open until their fruit could be gotten into market. It must have been collected and paid out before they became convinced of the utter hopelessness of their insolvency, and it is evident that they abandoned same on the 9th day of May.

The pretense that the proceeds of the sales last made were paid out to general creditors, and this $20,000 applied to the payment of their notes is an after-thought.

There is no sufficient evidence to authorize the court to charge Mrs. Mary H. Caldwell, the mother, with any portion of the amount charged against her on the books of her two sons. Their books are not evidence against her, and the witnesses called by the appellees to sustain these charges prove that the account was improperly kept against her, and that she did not owe any part of it. The testimony of Kinney shows that in all their transactions he was representing the banking house of E. Kinney & Co., and as the sales to him resulted in the payment of the debts due to that firm, he must be held to the consequences resulting from the attempted preference. It is therefore considered by this court that the judgment as to Mary H. Caldwell, senior, be reversed. That the judgment as to F. Kinney be reversed to the extent herein indicated and also in so far as it may be construed to affect the interest in the fruit house property conveyed to him by Samally. And that the judgment as to Mary H. Caldwell, junior, be affirmed. The questions touching the distribution of the assets now in the hands of the circuit court, not having as yet been passed upon by the tribunal, can not be considered by this court.

*Hallam, Stevenson & Myers, for appellant.*

*Webster, for appellee.*